

FILED
2012 FEB 28  A 10: 06
CLERK OF COURTS
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY
CIVIL DIVISION

| | |
|---|---|
| ALYSSA MEHLING SMITH,<br>Individually and as Executor of the Estate<br>of Terese M. Mehling & on behalf of all<br>Lawful Beneficiaries<br>59 Barley Corn Drive<br>Sunbury, OH  43074<br><br>and<br><br>AARON MEHLING,<br>28230 Southbridge Circle<br>Westlake, OH  44145<br><br>       Plaintiffs,<br><br>v.<br><br>L. HAL ENGELTER aka<br>LEONARD HAL ENGELTER,<br>28230 Southbridge Circle<br>Westlake, OH  44145<br><br>and<br><br>JOHN HANCOCK ANNUITIES,<br>c/o CSC-Lawyers Incorporating Service,<br>Statutory Agent<br>50 W. Broad Street, Suite 1800<br>Columbus, OH  43215 | C    Judge: NANCY MARGARET RUSSO<br>          CV 12 776907<br><br>JUDGE<br><br><br><br><br><br><br>**COMPLAINT & JURY DEMAND** |

EXHIBIT

A

3.  Plaintiff Smith and her brother, Plaintiff Aaron Mehling (hereinafter "Aaron" or "Plaintiff Mehling," a college student whose permanent address is the Westlake house he had shared with his parents, Robert and Terese Mehling, both of whom are now deceased), are the sole beneficiaries of the estate of their mother.

4.  Defendant L. Hal Engelter aka Leonard Hal Engelter, (hereinafter "Engelter"), resided with Decedent at 28230 Southbridge Circle, Westlake, OH  44145 in Cuyahoga County from 2008 to the present maintaining addresses in MI and OH, including at 11381 15 Mile Rd., Marshall, MI 49068, and 12055 S Sherman Lake Dr., Augusta, MI 49012;

5.  Defendant John Hancock Annuities, (hereinafter "JHA"), is a business that offers financial products, including but not limited to life insurance, annuities, and retirement accounts, which transacted business in Ohio, caused tortious injury in Ohio, and has at least one account that the Decedent held in her name at the time of her death.

6.  Defendant John Hurd, (hereinafter "Hurd"), is an agent/broker/financial planner offering financial products, including but not limited to life insurance, annuities, and retirement accounts, transacted business in Ohio, caused tortious injury in Ohio and was the agent for at least one Cuyahoga County, Ohio client on at least one account that the Decedent held in her name at the time of her death.

7.  Defendant, Signator Investors, Inc.,  is the broker dealer for JHA, is registered with the Securities and Exchange commission (SEC) and Financial Industry Regulatory Authority (FINRA) which provides investment products and services, as well as investment advisory services for Ohio clients, its statutory agent, CSC-Lawyers Incorporating Service Corporation, 50 W. Broad Street, Suite 1800, Columbus, OH  43215, and it, through the actions of its agent, transacted business in Ohio, caused tortious injury in Ohio and was the

both of her children when they were apart, no less than several times a week, as their schedules permitted.

15. At all times relevant herein, it was Decedent's focus to ensure that her children would be taken care of at the time of her death.  She made this clear to her attorney, her longtime financial advisor, her children and her mother, as well as in her estate plan.

16. At no time did this focus ever change.

17. Sometime in late summer, early fall 2007 Decedent began a relationship with Engelter, who she knew since she was young.

18. In the Fall of 2007, Engelter induced Decedent to make a loan to a friend of Engelter's, namely Donald J. Crosby, of Global Behavior, in the amount of Thirty Thousand Dollars ($30,000), with the promise that the money would earn 20% interest each year, the total sum to be repaid to Decedent on or before October 12, 2010, Engelter representing to Decedent that this would be the best way to save for her daughter's wedding.

19. Decedent received only two payments before her death.  Engelter had represented to Plaintiff's Decedent and to Plaintiffs that Crosby is living in his car and is not collectible, however, the Estate has located him and is now making efforts to collect on the promissory note.  Two payments have since been made.

20. In January of 2008, Engelter convinced Decedent to start a business with him called Business and Pleasure, L.L.C. that she would solely own and that could be operated as a branch of a supposedly established business he already owned. With the exception of a few travel arrangement made through the business, it seems to have only existed as a shell company with accounts that served to receive money from Decedent's John Hancock account and to give Engelter unfettered access to those monies.

Engelter has transferred the majority, if not all, of the decedent's assets into his name by beneficiary designation, directly opposing the decedent's own stated wishes.

29. Defendants JHA and Hurd have also refused to produce any records to the Estate and/or to turn over the accounts.

30. Engelter, despite knowing of Decedent's alcoholism and end stage cirrhosis of the liver, continued to buy alcohol for her, continued to serve it to her, and then berated her, loudly and cruelly, for her constant intoxicated state, all the while demanding that she write a check from her rollover IRA for each item they purchased, from groceries to travel, and such purchases of alcohol to an individual with substance abuse problems were designed to circumvent the rights of the property owner to dispose of her property.

31. Although exact amounts of withdrawals are currently unknown, Defendant withdrew or improperly caused Decedent to withdraw large sums of money each year, for example, over $100,000 in 2010, for their support and extravagant lifestyle.

32. Upon information and belief, the Pershing account that had close to a million dollars before Engelter entered Decedent's life has a current balance of under $450,000.00 as a result of Engelter's spending without Decedent's consent and/or knowing consent.

33. Significant amounts of Decedent's money were spent by Engelter on his own personal needs, as well as on his children.

34. Engelter also used Decedent's money to make loans to his children, the first check on the new business account being one written by Engelter to his son Scott Engelter in the amount of One Thousand Five Hundred Dollars ($1,500.00).

35. All the while Engelter represented himself as working and wealthy and told Decedent's children it was he who was supporting their mother and his extravagant lifestyle.

7

44. In the summer of 2010 Engelter dropped all pretense of working, but continued to live an extravagant lifestyle using Decedent's money.

45. At the time of her death, Decedent was the owner of one or more accounts or contracts, including the annuity/IRA and a Signator account, account no. JH1-964840 with Defendant Robert Hurd acting at all times as agent for Defendant JHA and selling products which benefitted JHA or himself, both at all times treating Engelter as the real client and owner of the accounts.

46. Hurd, was and has been, at all times relevant herein, an agent for JHA, with him name appearing on all JHA and Signator statements and correspondence.

47. Upon Information and Belief, Hurd never met Decedent at any time before removing all of her accounts from her long time financial advisor, and never had any conversations with her about changing the beneficiary of her account(s) from her fatherless children to a man who had moved in with her three months earlier.

48. Hurd also did not have any conversations with her which would have allowed him to know his client so that he could recommend the appropriate financial products for her, that would be consistent with her existing estate plans and money management needs and/or Hurd did not comply with Decedent's wishes and needs.

49. Hurd and JHA failed to comply with all of the applicable SEC and FINRA regulations, engaging in acts and omissions for which he and his broker, JHA are liable.

50. At all times relevant herein, Signator has served as the broker dealer for Defendant JHA, and, in that capacity, has, among its responsibilities, the obligation to monitor the compliance by its member companies, agents and representatives as to their behavior in the marketplace, including each agent's knowledge of his customers and his selection of the

57. All Defendants abused that position of trust and converted Decedent's property and assets.

58. As a direct result of All Defendants' conversion and embezzlement, Plaintiffs were significantly injured.

## SECOND CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH EXPECTANCY OF INHERITANCE

59. Plaintiffs incorporate the allegation contained in Paragraphs 1 through 58 as if fully rewritten herein.

60. All Defendants have intentionally interfered with Plaintiffs' expectancy of inheritance of both probate and non-probate assets from Decedent's estate because the Defendants intentionally prevented Plaintiffs from receiving from Decedent an inheritance or gift Plaintiffs would otherwise have received.

61. All Defendants, by fraud, duress, or other wrongful conduct intentionally prevented Plaintiffs from receiving from Decedent an inheritance or gift that the other person would otherwise have.

62. It is reasonably certain that if Defendants had not interfered, Plaintiffs would have received their inheritance.

63. All Defendants' interference caused damage to Plaintiffs.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

64. Plaintiffs incorporate the allegation contained in Paragraphs 1 through 63 as if fully rewritten herein.

65. Decedent conferred a benefit upon Engelter of which he was aware.

66. Engelter conferred a benefit upon himself, and may also have conferred a benefit on his family members, and his friends, (hereinafter "Engelter's giftees"), of which they were aware, using Decedent's, and therefore her heirs', property and assets.

11

76. The Plaintiffs were injured by this fraudulent act and the injury was caused by the Decedent's relying on the representation and/or concealment of facts committed by All Defendants.

77. Engelter committed fraudulent inducement to get her to dispose of her property against her will.

78. Engelter fraudulently completed tax withholding documents so that little or no money would be withheld from requested distributions, both for federal and state tax authorities, then gave false and misleading information to those professionals who prepared her tax returns, all in an effort to maximize the amount of the dollar withdrawals from her accounts, so that the tax payments would be put off to the distant future to maximize the sums Engelter would receive from the accounts, and encumbering the assets (those in the name of the Decedent alone) all to defraud the Decedent, her estate, and the taxing authorities.

79. Plaintiffs were seriously injured by Engelter's fraudulent acts.

## FIFTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

80. Plaintiffs incorporate the allegation contained in Paragraphs 1 through 79 as if fully rewritten herein.

81. Each and every Defendant herein had an agency relationship with, and a fiduciary duty to, Plaintiff's Decedent during her lifetime, and each has an agency relationship with Decedent's Executor as concerns Decedent's business during her lifetime.

82. Each such agency relationship was defined either by documents which define it or, by presenting itself or himself as an agent on behalf of Plaintiff's Decedent or the Executor;

83. Each Defendant, by acting, instead, at the direction of a false agent using his status as an agent to transfer the subject automobile from the name of the Decedent's solely owned

13

92. All Defendants engaged in self-dealing, all in violation of their fiduciary obligations, all such actions working to their benefit.

93. As a direct result of All Defendants' breach of fiduciary duty, Plaintiffs were injured.

**WHEREFORE**, Plaintiffs demand the following as to their Second, Third, and Fourth Causes of Action:

a.  Plaintiffs ask that this court grant an emergency temporary restraining order or permanently restrain Engelter from obtaining or transferring any property in which Decedent had an interest at the time of her death and preventing JHA and Robert Hurd from delivering the proceeds of Decedent's account(s) to Engelter until further order by this court. (A motion for Emergency TRO is being filed concurrently with this Complaint);

b.  That this court Order the return of the vehicle listed above to the Decedent's Estate at Engelter's cost;

c.  That this court declare the beneficiary designations made on the decedent's assets did not comply with the requirements for such designations to be upheld, specifically, that those changes were caused by fraud, duress, inducement by the defendant, lack of capacity, or any other improper reasons;

d.  That this court issue an order declaring all of the beneficiary designation, other than any to Plaintiffs void and of no effect;

e.  That this court award damages against the Defendant in the amount of monies taken, expended, or transferred from Decedent during her lifetime and after her death;

15

FILED

2012 FEB 28  A 0: 07

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Judge:  NANCY MARGARET RUSSO

ALYSSA MEHLING SMITH, *et al.*,       )       (
Executor of the Estate of Terese M. Mehling )              CV 12 776907
                                      )
                                      )
                                      )       JUDGE
                                      )
               Plaintiffs,            )       **MOTION FOR TEMPORARY**
                                      )       **RESTRAINING ORDER & FOR**
      v.                              )       **PRELIMINARY INJUNCTION**
                                      )
L. HAL ENGELTER aka                   )
LEONARD HAL ENGELTER, *et al.*,       )
                                      )
               Defendants.            )


Now come Plaintiffs Alyssa Mehling Smith, as next of kin and as Executor of the Estate

of her late mother, Terese M. Mehling (Plaintiff's Decedent), and Aaron Mehling, as next of kin,

by and through counsel, and move this Court for the issuance of a Temporary Restraining Order,

pursuant to Rule 65, Ohio Rules of Civil Procedure, and, then a preliminary injunction against

Defendants, their agents, employees, and other representatives, temporarily ordering them not to

transfer, distribute, liquidate, diminish the value of or give any other interest in any tangible or

intangible property in which Plaintiff's Decedent had an interest at the time of her death or for

the period immediately preceding her death (from October of 2007 until the present), including

property titled in her name, property listing her as a beneficiary, property which she owned

jointly or as a tenant in common with others, and property in the name of her business, Business & Pleasure Group, LLC, pending a final disposition of Plaintiffs' action.

The grounds for this Motion are as follows:

1. There is a strong likelihood that unless restrained from doing so, Defendants, individually or by working together, will distribute to Defendant Engelter or Defendants will otherwise dispose of those funds, assets, and accounts thereby eliminating any possibility that the Plaintiffs could obtain such assets;

2. Plaintiffs will sustain immediate and irreparable injury, loss, and damage before notice can be given and the adverse parties or their attorneys can be heard in opposition. Notwithstanding the foregoing, Plaintiffs have notified counsel for Defendant Engelter of this hearing, as set forth in the Affidavit of Counsel, attached hereto and incorporated herein.

The grounds for this motion are set forth in the Brief in Support and in the Affidavit of Plaintiff Alyssa Mehling Smith, both of which are attached hereto and incorporated herein.

**WHEREFORE**, Plaintiffs respectfully request that this Court issue a Temporary Restraining Order, without bond, enjoining the Defendants, their agents, servants, employees, and attorneys, temporarily ordering them not to transfer any tangible or intangible property which is currently titled in the name of Terese M. Mehling or property in which she had an interest at the time of her death or for the period immediately preceding her death (from October of 2007 until the present), including property titled in her name, property listing her as a beneficiary, property which she owned jointly or as a tenant in common with others, and

2

property in the name of her business, Business & Pleasure Group, LLC, pending a final disposition of Plaintiffs' action, such Temporary Restraining Order to continue until such a time as a hearing may be had on Plaintiffs' request for a Preliminary Injunction.

Respectfully submitted,

Respectfully submitted,

Milano Weiser, Attorneys at Law

*Jay Milano / Rachel Weiser / Kge*

JAY MILANO (0008204)
RACHEL MAY WEISER (0070092)
MilanoLaw Building
2639 Wooster Road
Rocky River, Ohio 44116
P (440) 356-2828 F (440) 356-2873
rmw@milanolaw.com

*Kathryn G Eloff*
*James Matthew Willson*

Kathryn Gonser Eloff (0026151)
James Matthew Willson (0086794)
3820 Monticello Blvd.
Cleveland Heights, OH 44121
P (216) 382-1500 F (216) 382-6843
kgeloff@prodigy.net

Attorneys for Plaintiffs

3

CERTIFICATE OF SERVICE

Copies of the foregoing Plaintiffs' Motion for Temporary Restraining Order and for Preliminary Injunction, were emailed to Counsel for Defendant Hal Engelter and were served by certified mail, along with the Complaint, as well as by regular U.S. mail, postage prepaid, upon the following this 28th day of February, 2012:

John Hancock Life Insurance Company
c/o Corporation Service Co., Statutory Agent
50 West Broad St., Suite 1800
Columbus. OH 43215

SIGNATOR INVESTORS, INC.
c/o CSC-Lawyers Incorporating Service,
Statutory Agent
50 W. Broad Street, Suite 1800
Columbus, OH  43215

Robert Hurd,
Agent for John Hancock
120 West Dr. North Suite 3
Marshall, MI 49068

KATHRYN GONSER ELOFF (0026151)
Counsel for Plaintiffs

4

STATE OF OHIO )
                     ) SS
COUNTY OF FRANKLIN )

Alyssa Mehling Smith, being first duly sworn, deposes and states as follows:

1. I am the daughter of Terese M. Mehling, who died in Westlake, Ohio on December 16, 2011;

2. I am the Executor of my mother's estate, Cuyahoga County Probate Court  Case No. 2011 EST 147848;

3. My mother has been an extremely heavy drinker from the mid 1990's until her death;

4. From the mid 90's until my father's death in November of 2006, my mother was so completely impaired by her drinking that she often passed out, and was so often incoherent that she was totally unable to take part in family decisions or personal business matters;

5. My father frequently expressed his concern about how my mother would be able to manage her money if he weren't around to do it for her;

6. After my father's death, in the summer of 2007, I realized how sick my mother really was;

7. My mother was hospitalized that summer for cirrhosis, and the doctor told us that her only chance to live (and it wasn't a guarantee)  would be if she stopped drinking immediately and changed her diet and lifestyle;

8. After my mother was released from the hospital, she showed me a list of what assets she had inherited from my father, and told me that Aaron and I were the beneficiaries on everything our parents had accumulated;

9. I first met Hal Engelter early in 2008, at which time he presented himself to my mother and me as being wealthy, making it clear that he enjoyed the finer things in life and that he had the means to pay for them;

10. I lived at home the summers of 2008 and 2010, and Hal told me repeatedly about his numerous business ventures, the assets he had, and he frequently repeated that he wanted to take care of my mother and my brother and me by using his own assets to do so;

11. During the early summer of 2008, I told Hal very directly about my mother's mental and physical conditions, and told him specifically about the doctor's statement from the year before that her only slim chance for survival was to stop drinking and to change her lifestyle;

12. Hal also stressed to me that my brother and I would always be very well taken care of; that Hal's money was for his children and my mother's money was for Aaron and me;

13. I didn't look into Hal's representations about his wealth and business, believing that he had my mother's interests at heart;

14. Although there were some occasions when my mother was sober, for the most part, for the entire period Hal lived with her, she was drunk;

15. No matter what, I knew that my mother loved me very much, and she never said or did anything that would lead me to think otherwise;

16. Hal and my mother argued constantly, with Hal telling my mother that she had no money;

17. Hal was vicious to my mother, belittling and berating her, especially about how she behaved when she was drunk;

18. When Hal bought tickets for his children to visit, I observed that his children were rude and disrespectful to my mother, and my mother told Hal and me both how much she despised his children;

19. My brother and I became very uncomfortable with Hal's extravagances, the $500 dinners, the lavish trips to California and Florida, the boat that they bought but didn't use, but he continued to reassure us that he had plenty of money to pay for all of that;

20. As time went on, I talked again to my mother about where the money was coming from, and she repeatedly told me that Hal was paying his own way, that they were sharing expenses, and that Aaron and I weren't to worry because we were named as beneficiaries on everything she had;

21. I believe that Hal Engelter took advantage of my mother's incapacity, urging her to sign documents that she couldn't understand, taking her money without her knowledge and consent, acting on her behalf (but without her knowledge or understanding) to make business and personal decisions that were against her interest and intentions;

22. My mother always, no matter how impaired she was, made it very clear that she loved me, that my brother and I were the most important persons in her life, and it is impossible for me to believe that my mother would knowingly have incurred large debts while giving any part of the money our father had saved to a man who was so insulting, condescending, and even vicious to her, while leaving my brother and me nothing but the debts incurred by Hal;

23. After my mother died, Hal told me that he had to have death certificates, and then he told me that my mother had left everything to him, that she hated me, that he had figured out a way that she wouldn't have to pay the IRS any money for the 2010 tax year, and that there were a lot of bills including a large hospital bill, that he had told the hospital she had no assets, so it would have to be paid for by their charity care program;

24. Hal told me that he was entitled to something for "wiping her butt" for the last few days of my mother's life;

25. I believe (but have no evidence of the fact other than Hal's own statement) that Hal Engelter had gotten himself named beneficiary of my mother's assets when he changed the accounts from my mother's longtime financial adviser to Hal's friend, Robert Hurd, and that, unless this Court orders him not to make any transfers, he will apply for and take that money, so that the estate will be left insolvent (with tax and other bills totaling some $250,000);

26. I ask that this court restrain the defendants from transferring, encumbering, or distributing anything in which my mother had an interest, until such time as the matter may be fully litigated in court.

FURTHER AFFIANT SAYETH NAUGHT.

Alyssa Mehling Smith

SWORN TO AND SUBSCRIBED before me this 16 day of February, 2012.

NOTARY PUBLIC

DANIEL W. DELK
NOTARY PUBLIC • STATE OF OHIO
Recorded in Franklin County
My commission expires May 27, 2016

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY
## RESTRAINING ORDER

Plaintiffs have requested that this Court issue a Temporary Restraining Order enjoining the Defendants, their agents, servants, employees, and attorneys, temporarily ordering them not to transfer any tangible or intangible property which is currently titled in the name of Terese M. Mehling or property in which she had an interest at the time of her death or for the period immediately preceding her death (from October of 2007 until the present). The reasons for this extraordinary request fall into three categories.

Any funds or assets that are transferred into Mr. Engelter's hands would immediately be at risk of attachment by creditors. According to various documents left in Decedent's home when Defendant Engelter left the state, Mr. Engelter has numerous tax obligations. Evidence of certain tax debts and levies for some of those years is attached as Exhibit "A" which contains notices and other correspondence from the IRS, for tax dates and tax years beginning in 1995 and continuing until at least August 24, 2011. The Exhibits also show that Mr. Engelter receives mail at no fewer than three addresses, the two listed on the attached tax notices in addition to the Michigan address he supposedly uses now. In addition to the tax obligations, Defendant Engelter appears also to have at least one other creditor, a certain Midwestern Audit. A letter from that creditor, dated Aug. 4, 2009, is attached hereto and is incorporated herein as Exhibit "B." It seems likely that Defendant Engelter has more outstanding liens and debts, and the discovery process will reveal that. But, considering the IRS liens and debts alone, anything that is transferred into his name, under his tax identification number would be at risk, and Plaintiffs

would be forever denied access to that money.  Plaintiffs need to have an order restraining the transfer to keep the assets from becoming subject to claims from Mr. Engelter's creditors.

Plaintiff Executor has no funds with which to pay any bills of the estate. Business and Pleasure LLC, Decedent's solely owned business, had one asset, the car which Defendant Engelter transferred out of the business name and has taken with him to Michigan.  Other than that, there is nothing but debt for Plaintiffs Alyssa Mehling (who also serves as Executor of her mother's estate) and her brother to deal with in addition to the death of their 51-year old mother. The bank accounts have been depleted, and the children are trying to market the family home, without any funds for utilities, mortgage payments, or maintenance.  At this point, the car and any cash Defendant Engelter took with him needs to be returned to Plaintiffs, and the car sold so that Plaintiffs have enough money for minimal maintenance of the property until such time as a buyer can be located and a "short sale" arranged.  Plaintiffs need a restraining order to prevent Defendant Engelter from removing or converting any additional assets to cause further harm.

The discussion about whether or not a temporary restraining order should be granted usually weighs the sufficiency of a simple judgment for money damages against the potential damage to Plaintiffs who would have no way of surviving until the time of judgment and/or who would be completely unable to locate any assets which might have been transferred from entity to entity, state to state, person to person.  Defendant Engelter has an interest in many business entities, some of which are still registered as active in Michigan, California, Ohio, and possibly other states, any of which could be used to shield money.  He moves often and travels frequently. He has even talked to Plaintiffs about starting another new business, perhaps a Florida branch of their mother's business.

2

There is currently a temporary restraining order in effect in the Probate adversarial case, Case No. 2011 ADV 174773.  So for as Plaintiffs are aware, no defendants have violated that order since it was granted, on December 30, 2011.  The car and cash are gone.  But the John Hancock account application has been completed and it appears that only the restraining order has kept it from being paid out to Defendant Engelter.

Plaintiffs need to have an Order temporarily restraining all Defendants from transferring any property of any type in which the Plaintiffs' Decedent had an interest at the time of her death, or for the three years immediately preceding her death.

KATHRYN GONSER ELOFF (0026151)
Counsel for Plaintiffs

036032                    49012        IRS USE ONLY      WI

17247-753-00878-8                          200852   CP:      22E
C  0
For assistance, call:
1-800-829-0922
Your Caller ID:  789812

**Department of the Treasury**
**Internal Revenue Service**
Kansas City, MO  64999-0010

Notice Number: CP22E
Date:  January 5, 2009

**Taxpayer Identification Number:**
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
Tax Form: 1040A
Tax Year: December 31, 2003

066540.521030.0233.006 2 AT 0.471 1023

LEONARD H  ENGELTER
12055 S SHERMAN LAKE DR
AUGUSTA  MI  49012-9251557

| Amount You Owe as of January 26, 2009 |
| --- |
| $15,096.74 |

6540

## We Changed Your Account

*We will explain why you received this notice, how we changed your account, how this change affects you, and actions you may wish to take.*

## Why You Received This Notice

We changed your 2003 federal income tax return because of your recent audit.  Please see your copy of the report for a detailed explanation.  As a result of the audit you owe an additional amount.

## How We Changed Your Account

We changed your account as follows:

|  | None |
| --- | --- |
| Account balance before the audit | $9,604.00 |
| Increase in tax because of audit | $1,835.00  CR |
| Credit added tax withheld | $1,942.25 |
| Additional late payment penalty since prior notice | $3,442.27 |
| Interest charged |  |
| **Amount you now owe** | $15,096.74 |

## How This Affects You

Please pay the full amount by January 26, 2009 to avoid additional penalty and interest.  When making your payment:

- Make your check or money order payable to the **United States Treasury**
- Write the Social Security number and tax year shown at the top of this notice on the check or money order
- Use the payment coupon included with this notice

*EXHIBIT "A"*

89221-006-44019-1
C 0
For assistance, call:
1-800-829-7650
Your Caller ID:  282434

IRS USE ONLY     WI

)36                    49012

Notice Number: CP71C
Date:  May 21, 2007

Department of the Treasury
**Internal Revenue Service**
Stop 5000
P.O. Box 219236
Kansas City, MO  64121-9236

**Taxpayer Identification Number:**
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
**Tax Form:** 1040
**Tax Year:** December 31, 1999

01.6237.384594.0077.003 1 MB 0.326 920

237

LEONARD H ENGELTER
12055 S SHERMAN LAKE DR
AUGUSTA MI  49012-9251557

## Reminder:  You owe past due taxes for 1999

**Amount Owed:**                    $25,259.90
**Pay by:**                          June 11, 2007

**Why am I getting this notice?**

You have a past due tax balance for 1999. By law, we must tell you each year how much you owe. We will send you a notice for each tax year for which you still owe.

**What should I do?**

If you can make a payment:
1. Make your check or money order payable to the United States Treasury.
   Write tax year 1999 and this Social Security Number (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) on your payment.
2. Complete and detach the payment stub at the end of this notice.
3. Send the stub and your payment in the enclosed envelope.

If you can't pay the full amount owed:
1. Pay as much as you can now.
2. Review the Payment Options listed on the back of this page.
3. Call us at 1-800-829-7650 if you want to discuss payment options for the amount not paid.

*Reminder!  If you don't pay the amount owed by June 11, 2007, we will continue to add penalties and interest until the amount is paid in full.*



49012          IRS USE ONLY          WI

Department of the Treasury
**Internal Revenue Service**
Stop 5000
P.O. Box 219236
Kansas City, MO  64121-9236

For assistance, call:
1-800-829-7650
Your Caller ID:  282434

**Notice Number:** CP71C
**Date:** May 21, 2007

**Taxpayer Identification Number:**
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
**Tax Form:** 1040
**Tax Year:** December 31, 1995

036239.384594.0077.003 1 MB 0.326 920



LEONARD H  ENGELTER
12055 S  SHERMAN LAKE DR
AUGUSTA   MI   49012-9251557

16239

---

## Reminder:  You owe past due taxes for 1995

|  |  |
|---|---|
| **Amount Owed:** | **$18,700.09** |
| **Pay by:** | **June 11, 2007** |

**Why am I getting this notice?**

You have a past due tax balance for 1995.  By law, we must tell you each year how much you owe.  We will send you a notice for each tax year for which you still owe.

**What should I do?**

If you can make a payment:
1. Make your check or money order payable to the United States Treasury. Write tax year 1995 and this Social Security Number (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) on your payment.
2. Complete and detach the payment stub at the end of this notice.
3. Send the stub and your payment in the enclosed envelope.

If you can't pay the full amount owed:
1. Pay as much as you can now.
2. Review the Payment Options listed on the back of this page.
3. Call us at 1-800-829-7650 if you want to discuss payment options for the amount not paid.

*Reminder!  If you don't pay the amount owed by June 11, 2007, we will continue to add penalties and interest until the amount is paid in full.*

| Name of Taxpayer: | LEONARD H ENGELTER | | 06/30/2008 |
| Identification Number: | 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 | Total | 9.20.10 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or
the tax was not paid, and you have not shown that such failure was due to reasonable cause
an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1)
and/or Section 6651(a)(2) of the Internal Revenue Code.



### 2003 - DELINQUENCY PENALTY

| | |
|---|---|
| 01067    1. Delinquency penalty abated | 0.00 |
| 2. Date return due | 04/15/2004 |
| 3. Date return filed | 06/30/2008 |
| 4. Failure to File penalty rate | 0.225 |
| 5. Failure to Pay penalty rate | 0.250 |
| 6. Total corrected tax liability | 9,604.00 |
| 7. Allowable payments on or prior to due date of return | 1,835.00 |
| 8. Net Amount Due (line 6 less line 7) | 7,769.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | 1,748.03 |
| 10. Minimum penalty if over 60 days delinquent | 100.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | 1,748.03 |
| 12. Previously assessed Failure to File Penalty | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | 1,748.03 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | 1,942.25 |
| 15. Previously assessed Failure to Pay Penalty | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 | 1,942.25 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | 3,690.28 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under
  Internal Revenue Code section 6651(a)(2) through the date of this notice.  The addition to tax will
  continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction
  thereof, of nonpayment, not exceeding 25 percent.

Name of Taxpayer: LEONARD H ENGELTER
Identification Number: 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

| | Total | 06/30/2008 |
| --- | --- | --- |
| | | 9.20.10 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or the tax was not paid, and you have not shown that such failure was due to reasonable cause an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1) and/or Section 6651(a)(2) of the Internal Revenue Code.



### 2004 - DELINQUENCY PENALTY

001066

| | |
| --- | --- |
| 1. Delinquency penalty abated | |
| | 0.00 |
| 2. Date return due | 08/15/2005 |
| 3. Date return filed | 06/30/2008 |
| 4. Failure to File penalty rate | 0.225 |
| 5. Failure to Pay penalty rate | 0.195 |
| 6. Total corrected tax liability | |
| | 6,781.00 |
| 7. Allowable payments on or prior to due date of return | |
| | 1,414.00 |
| 8. Net Amount Due (line 6 less line 7) | |
| | 5,367.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | |
| | 1,207.58 |
| 10. Minimum penalty if over 60 days delinquent | |
| | 100.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | |
| | 1,207.58 |
| 12. Previously assessed Failure to File Penalty | |
| | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | |
| | 1,207.58 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | |
| | 1,046.57 |
| 15. Previously assessed Failure to Pay Penalty | |
| | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 | * |
| | 1,046.57 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | |
| | 2,254.15 |

• If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under Internal Revenue Code section 6651(a)(2) through the date of this notice.  The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

Name Of Taxpayer: LEONARD H ENGELTER
Identification Number: 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

06/30/2008
Total                    9.20

2005    TAX YEAR INTEREST COMPUTATION

Interest computed to                                    07/30/2008

Total Tax Deficiency                                    $3,462.00



| Plus Penalties* | |
|---|---|
| -Overvaluation | $.00 |
| -Substantial Understatement | $.00 |
| -Failure to File | $778.95 |
| -Negligence | $.00 |
| -Civil Fraud | $.00 |
| -Accuracy Penalties | $.00 |
| Total Penalties | $1,246.32 |
| Tax Deficiency and Penalties Subject to Interest | $4,708.32 |

01065

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| COMPOUND | 04/15/2006--06/30/2006 | 76 | 7% | $69.12 |
| COMPOUND | 07/01/2006--12/31/2006 | 184 | 8% | $196.58 |
| COMPOUND | 01/01/2007--12/31/2007 | 365 | 8% | $414.22 |
| COMPOUND | 01/01/2008--03/31/2008 | 91 | 7% | $94.59 |
| COMPOUND | 04/01/2008--06/30/2008 | 91 | 6% | $82.40 |
| COMPOUND | 07/01/2008--07/30/2008 | 31 | 5% | $23.62 |

|  |  |
|---|---|
| Total Interest | $880.53 |
| Total Underpayment | $3,462.00 |
| Total Penalties | $1,376.96 |
| Total Amount Due | $5,719.49 |

   Additional interest will be charged at the current rate compounded daily.  Interest is charged from the original due date of the return to a date 30 days after an agreement to the additional tax is signed, or to the date of payment, if earlier.  Negligence and fraud penalties, if applicable, will also continue to be charged.  Generally, if notice and demand is made for payment of any amount, and that amount is paid within 21 days after the date of the notice and demand, interest on the amount paid will not be charged after the date of the notice and demand. Since additional tax is due, you may want to pay it now and limit the interest and penalty charges.

* Interest on penalties became effective 7/19/1984 (1/1/1989 for negligence and fraud) and is computed from the due date of the return unless a valid extension was filed.

B294568

49012        IRS USE ONLY        WI        89221-006-44019-1        200919   CP:
                                                    C  0      09



Department of the Treasury
**Internal Revenue Service**
Stop 5000
P.O. Box 219236
Kansas City, MO  64121-9236

For assistance, call:
1-800-829-7650
**Your Caller ID:**  635815

**Notice Number:** CP71C
**Date:** May 25, 2009

**Taxpayer Identification Number:**
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
**Tax Form:** 1040
**Tax Year:** December 31, 1999

017064.609263.0081.002 1 AB 0.360 920



LEONARD H ENGELTER
12055 S SHERMAN LAKE DR
AUGUSTA  MI  49012-9251

17064

---

## Reminder:  You owe past due taxes for 1999

|  |  |
|---|---|
| **Amount Owed:** | **$28,692.37** |
| **Pay by:** | **June 15, 2009** |

**Why am I getting this notice?**
You have a past due tax balance for 1999.  By law, we must tell you each year how much you owe.  We will send you a notice for each tax year for which you still owe.

**What should I do?**
If you can make a payment:
1. Make your check or money order payable to the United States Treasury. Write tax year 1999 and this Social Security Number (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) on your payment.
2. Complete and detach the payment stub at the end of this notice.
3. Send the stub and your payment in the enclosed envelope.

If you can't pay the full amount owed:
1. Pay as much as you can now.
2. Review the Payment Options listed on the back of this page.
3. Call us at 1-800-829-7650 if you want to discuss payment options for the amount not paid.

*Reminder!  If you don't pay the amount owed by June 15, 2009, we will continue to add penalties and interest until the amount is paid in full.*

**DEPARTMENT OF THE TREASURY**
FINANCIAL MANAGEMENT SERVICE
P. O. BOX 1686
BIRMINGHAM, AL 35201-1686



005288

**THIS IS NOT A BILL**
**PLEASE RETAIN FOR YOUR RECORDS**

08/24/11



P77523153

LEONARD H ENGELTER     01     SO
LEONARD ENGELTER              FO
28230 SOUTHBRIDGE CIRC
WESTLAKE OH  44145-5328

As authorized by Federal law, we applied all or part of your Federal payment to a debt you owe.  The government agency (or agencies) collecting your debt is listed below.

| | |
|---|---|
| Internal Revenue Service | TIN Num: 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 |
| Federal Payment Levy Program | TOP Trace Num: P77523153 |
| Stop 5050, Annex 5 | Acct Num: 036748616230200312 |
| PO Box 219236 | Amount This Creditor:        $234.45 |
| Kansas City, MO  64121-9236 | Creditor: 51      Site: MC |
| **800-829-7650** | |
| PURPOSE: Tax Levy | |

The Agency has previously sent notice to you at the last address known to the Agency.  That notice explained the amount and type of debt you owe, the rights available to you, and that the Agency intended to collect the debt by intercepting any Federal payments made to you, including tax refunds. **If you believe your payment was reduced in error or if you have questions about this debt, you must contact the Agency at the address and telephone number shown above.** The U. S. Department of the Treasury's Financial Management Service cannot resolve issues regarding debts with other agencies.

We will forward the money taken from your Federal payment to the Agency to be applied to your debt balance; however, the Agency may not receive the funds for several weeks after the payment date.  If you intend to contact the Agency,  please have this notice available. Please do not contact the Social Security Administration regarding this reduction made in your Federal payment.

U. S. Department of the Treasury
Financial Management Service

**PAYMENT SUMMARY**
PAYEE NAME:  LEONARD H ENGELTER                          PAYEE TIN: 367486162
PAYMENT BEFORE REDUCTION:        $1563.00              PAYMENT DATE: 08/24/11
TOTAL AMOUNT OF THIS REDUCTION:        $234.45      PAYMENT TYPE: Check
PAYING FEDERAL AGENCY: Social Security Administration      BENEFICIARY TIN: 367486162
CLAIM ACCT NUM: 367486162 A

FOR OFFICIAL USE ONLY:      0000005264 P77523153846327160051502702 5 SSA-P01LEON005264

If you cannot pay the balance in full, contact an IRS representative at 1-800-829-0922 to discuss payment options. If you've recently contacted us to include this amount in an installment agreement or have already paid it in full, disregard this payment request.

## Other Actions You May Wish To Take

If you do not agree with the changes to your account or if you have questions about this notice, you may call 1-800-829-0922.

Retain a copy of this notice with your federal tax records.

For tax forms, instructions and information visit **www.irs.gov**. Access to this site will not provide you with any taxpayer account information.

### Penalty and Interest

About Your Notice - The penalty and/or interest charges on your account are explained on the following pages. If you want a more detailed explanation of your penalties and interest, please call the telephone number listed on the top of this notice. You may call your local IRS telephone number if the number shown on your notice is a long-distance call for you. All days mentioned in the paragraphs below are calendar days, unless specifically stated otherwise.

### Penalties:

## 01 Penalty for Filing Return Late $1,748.03

We charged a penalty because you filed your return late. We use the number of months the return is late to determine penalty. If you filed more than 60 days late, the minimum penalty may apply. The minimum penalty is lesser of $100 or 100% of the tax due. If you disagree with this penalty, see "Removal of Penalties" in this notice. To avoid this penalty in the future, you should file your returns by the return due date.

*(Internal Revenue Code section 6651)*

## 02 Penalty for Not Paying a Proper Estimated Tax for Individuals, Estates, and Trusts $195.19

We charged a penalty because you did not pay a proper quarterly estimate of your tax. For more information, see Instructions for Form 2210 or Publication 505, Tax Withholding and Estimated Tax.

*(Internal Revenue Code section 6654)*

B036032

Kansas City Service Center          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          Tax Period:     December 31, 2003

## 07 Penalty for Paying Taxes Late $1,942.25

We charged a penalty because you paid your taxes late. We count part of a month as a full month. If you disagree with this penalty, see "Removal of Penalties" in this notice. To avoid this penalty in the future, you should pay your taxes by the due date. Even if you have an extension to file your tax return, you do not have additional time to pay your tax.

*(Internal Revenue Code section 6651)*

The table below shows how we figured your penalty. It may include amounts charged before the Adjustment. We multiplied the number of months times the monthly rate (1/2 percent) times the principal (not to exceed 25%).

| Date | No. Months | Rate/Month | Principal | Penalty |
|------|-----------|-----------|-----------|---------|
| 01/15/2009 | 50 | 0.50% | 7,769.00 | 1,942.25 |
| | | | Total Penalty: | 1,942.25 |

## Removal of Penalties

The law lets us remove or reduce penalties if you have reasonable cause or receive erroneous written advice from IRS.

## Reasonable Cause

If you believe you have an acceptable reason why IRS should remove or reduce your penalties, send us a signed explanation. After we review your explanation, we will notify you of our decision. In some cases, we may ask you to pay the tax in full before we reduce or remove the penalty for paying late.

## Erroneous Advice from IRS

We will remove your penalty if all the following apply:

1. You asked IRS for advice on a specific issue,
2. You gave IRS complete and accurate information,
3. You received advice from IRS,
4. You relied on the advice IRS gave you, and
5. You were penalized based on the advice IRS gave you.

To request removal of the penalty because of erroneous advice from IRS, you should do the following: (1) complete Form 843, Claim for Refund and Request for Abatement; and (2) send it to the IRS Service Center where you filed your return.

### Interest:

## 09 Interest

We charged interest because you did not pay your tax on time. Generally, we calculate interest from the due date of your return (regardless of extensions) until you pay your tax in full. The interest rate is variable and may change quarterly. We charge interest on all penalties except estimated tax penalties.

*(Internal Revenue Code section 6601)*

The table below shows how we figured your interest.  It may include amounts charged before the Adjustment.  We multiplied the factor times the principal.

| From Date | To Date | Days | Rate | Factor | Principal | Interest |
|---|---|---|---|---|---|---|
| 04/15/2004 | 06/30/2004 | 76 | 5.0% | 0.010435882 | 9517.03 | 99.32 |
| 06/30/2004 | 09/30/2004 | 92 | 4.0% | 0.010104808 | 9616.35 | 97.17 |
| 09/30/2004 | 12/31/2004 | 92 | 5.0% | 0.012646750 | 9713.52 | 122.84 |
| 12/31/2004 | 03/31/2005 | 90 | 5.0% | 0.012404225 | 9836.36 | 122.01 |
| 03/31/2005 | 09/30/2005 | 183 | 6.0% | 0.030536685 | 9958.37 | 304.10 |
| 09/30/2005 | 12/31/2005 | 92 | 7.0% | 0.017798686 | 10262.47 | 182.66 |
| 12/31/2005 | 06/30/2006 | 181 | 7.0% | 0.035318388 | 10445.13 | 368.91 |
| 06/30/2006 | 12/31/2006 | 184 | 8.0% | 0.041148414 | 10814.04 | 444.98 |
| 12/31/2006 | 06/30/2007 | 181 | 8.0% | 0.040464123 | 11259.02 | 455.59 |
| 06/30/2007 | 12/31/2007 | 184 | 8.0% | 0.041148414 | 11714.61 | 482.04 |
| 12/31/2007 | 03/31/2008 | 91 | 7.0% | 0.017555017 | 12196.65 | 214.11 |
| 03/31/2008 | 06/30/2008 | 91 | 6.0% | 0.015028621 | 12410.76 | 186.52 |
| 06/30/2008 | 09/30/2008 | 92 | 5.0% | 0.012646750 | 12597.28 | 159.31 |
| 09/30/2008 | 12/31/2008 | 92 | 6.0% | 0.015195019 | 12756.59 | 193.84 |
| 12/31/2008 | 01/05/2009 | 5 | 5.0% | 0.000685119 | 12950.43 | 8.87 |
| | | | | | Total Interest: | 3442.27 |

\*    **Additional Interest Charges**

If the amount you owe is $100,000 or more, please make sure that we receive your payment within 10 work days from the date of your notice.  If the amount you owe is less than $100,000, please make sure that we receive your payment within 21 calendar days from the date of your notice.  If we don't receive full payment within these time frames, the law requires us to charge interest until you pay the full amount you owe.

B030032                                                                                          CP:

Kansas City Service Center                    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              Tax Period:    December 31, 2003

56540

---

✂ **CUT HERE**

Return this voucher with your payment or correspondence.

Your Telephone Number:        Best Time to Call:
(    )_____-_____         _____AM_____PM
     56,562            48,762             0

**Amount you owe:**    $15,096.74
  • You will avoid additional penalties and/or
    interest if we receive your full payment by
    **January 26, 2009**

☐ **Amount enclosed:**  $_____
  • Make payable to United States Treasury
  • Write Taxpayer Identification Number, tax
    period and tax form number on payment

WI              200852       010207          17247-753-00878-8

☐ **Correspondence enclosed**

22E    Internal Revenue Service
    Kansas City, MO  64999-0010

LEONARD H ENGELTER
12055 S SHERMAN LAKE DR
AUGUSTA MI  49012-9251557

# MIDWESTERN AUDIT SERVICES, INC.

1-800-204-0190

August 4, 2009

Leonard Engelter
28230 Southbridge Cir
Westlake OH  44145-5328

| Account #<br>923089 | Client Name<br>CONSUMERS ENERGY | | Client #<br>100022720427 | Amount Due<br>$699.77 |

Your account is seriously past due.  Several attempts have  been made to collect this debt, but there is still a balance owing with  no current arrangements for payment.

Isn't it time that you took some positive action to resolve this debt and  honor your obligation to this creditor!

If you have any questions, or to set up an arrangement for payment, call  our office toll free at 1-800-204-0190.  Business hours are from 8:00 A.M.  to 6:00 P.M. Monday through Friday, or, write to P.O. Box 1707, Troy, MI 48099.

This is an attempt to collect a debt.  Any information obtained will be used for  that purpose.  This communication is from a debt collector.

Sincerely,

Midwestern Audit Services, Inc.
1-800-204-0190

Any returned check will be assessed a fee of $20.00 per check.

Midwestern Audit Services, Inc. • P.O. Box 725129 • Berkley, MI. 48072 • 1-800-204-0190

*** Please detach below and return in the enclosed envelope with your payment ***          3587-MASI1382-TYC0167AD5

PO Box 505
Linden MI 48451-0505
ADDRESS SERVICE REQUESTED

Acct #: 923089
Client: CONSUMERS ENERGY
Amount Due: $699.77

#BWNKGZZ
#TYC0167AD5#      923089-A3820
Leonard Engelter
28230 Southbridge Cir
Westlake OH  44145-5328

Midwestern Audit Services, Inc.
PO Box 725129
Berkley MI 48072-5129

EXHIBIT "B"



72634897

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO



ALYSSA MEHLING SMITH ETAL
    Plaintiff

L. HAL ENGELTER AKA LEONARD HAL ENGELTER
ETAL
    Defendant

Case No: CV-12-776907

Judge: NANCY MARGARET RUSSO

## **JOURNAL ENTRY**

MOTION FOR TRO GRANTED. SUPP JE ATTACHED OSJ.
COURT GRANTS ORAL MOTION FOR EXPEDITED DISCOVERY GRANTED.
HEARING SET FOR 3/12/12 AT 1PM; BOND TO BE POSTED IN THE AMOUNT OF $100.

Judge Signature       Date

RECEIVED FOR FILING

FEB 2 8 2012

GERALD E. FUERST, CLERK
By _____ Deputy

02/28/2012

Page 1 of 1

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| ALYSSA MEHLING SMITH, *et al.*, | ) CASE NO. 776907 |
| | ) |
| | ) JUDGE *N.M. Russo* |
| | ) |
| and | ) |
| | ) |
| | ) **TEMPORARY RESTRAINING ORDER** |
| Plaintiffs | ) |
| v. | ) |
| | ) |
| | ) |
| L. HAL ENGELTER aka | ) |
| LEONARD HAL ENGELTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

On this 28th day of February, 2012, this matter came before the court upon Plaintiffs' Motion for a Temporary Restraining Order against Defendants, their agents, servants, employees, and attorneys, temporarily ordering them not to transfer any tangible or intangible property which is or was titled in their names or in the name of Decedent Terese Mehling, not to make any withdrawals from bank or credit union accounts, not to make any changes in ownership of life insurance policies, pension, or other retirement accounts, not to execute any documents relating to the sale, transfer, or encumbrance of any real estate which may be titled in their names, such Temporary Restraining Order, pending a final disposition of Plaintiffs' action, the Court, based upon the Motion, Brief, and the Affidavit attached thereto, finds the Motion to be well-taken.

5

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendants, their agents, servants, employees, and attorneys, are temporarily ordered to not transfer any tangible or intangible property which is titled in their names or in the name of Decedent Terese Mehling, not to take withdrawals from bank or credit union accounts, not to make any changes in ownership of life insurance policies, pension, or other retirement accounts, not to execute any documents relating to the sale, transfer, or encumbrance of any real estate which may be titled in their names, such Temporary Restraining Order to continue until such a time as a hearing may be had on Plaintiffs' request for a Preliminary Injunction.

IT IS SO ORDERED.

_____
Judge

This matter is set for a Preliminary Injunction hearing on ___3/12___,
2012 at __1pm__, in Courtroom __18-C__.

Bond is set at $ __100__.

RECEIVED FOR FILING

FEB 2 8 2012

GERALD E. FUERST, CLERK
By _____ Deputy

THE STATE OF OHIO } I, GERALD E. FUERST, CLERK OF
Cuyahoga County } SS. THE COURT OF COMMON PLEAS
                        WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY
TAKEN AND COPIED FROM THE ORIGINAL
_____ 2-28-12
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 28
DAY OF __Feb__ A.D. 20 12
GERALD E. FUERST, Clerk
By _____ Deputy