**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALYSSA MEHLING SMITH, ET AL.,** | ) | **CASE NO.1:12CV596** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **L. HAL ENGELTER, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs' Motion to Remand (ECF #14) and Motion for Renewed TRO (ECF # 15) and Defendants' Motion to Stay (ECF # 16). For the following reasons, all the above Motions are denied.

Plaintiffs' Complaint alleges the following facts. On December 29, 2011, Plaintiffs Alyssa Mehling Smith and Aaron Mehling filed an action with Cuyahoga County Probate Court alleging concealment of assets of the Estate by Defendant L. Hal Engelter ("Engelter"). On February 28, 2012, Plaintiffs filed a Complaint in Cuyahoga County Court of Common Pleas against Defendants Engelter, John Hancock Annuities, Robert Hurd (agent for John Hancock) and Signatore Investors, Inc. According to the Complaint, Alyssa is the Executrix of her deceased mother Terese Mehling's estate. Terese died in 2011. Alyssa and Aaron are brother and sister and are the sole beneficiaries of the estate of their mother, Terese. Engelter resided with Terese in Westlake, Ohio from 2008 to sometime around the time of Terese's death in December of 2011.

1

The primary issue is a John Hancock investment account allegedly bought with an IRA left Terese by her deceased husband Robert Mehling, father of Alyssa and Aaron.  The IRA was valued at $975,000.00 in 2006.  Terese was ill throughout the relevant time period, having struggled with alcoholism for over 20 years.  Terese suffered from end stage cirrhosis of the liver and mental health issues.  During the time of her marriage to Robert Mehling, Terese was never able to manage money due to her health issues and alcoholism.  After the death of Robert, Terese relied upon family attorney Charles Gallagher and her family to handle her finances and repeatedly indicated to Plaintiffs and Gallagher that she intended to care for her children financially after she passed.

Sometime in 2007, Terese began a relationship with Engelter, whom she had known since she was young.  Engelter convinced Terese to invest monies with a friend of Engelter.  Engelter told Terese that an initial investment of $30,000.00 would earn annual returns of 20%.

In 2008, Engelter convinced Terese to invest in a business with Engelter which would give Engelter access to the invested money.  Around this time, Plaintiffs' allege Engelter moved in with Terese and began siphoning her money for his own use by transferring Terese's money from family attorney Gallagher's management to a John Hancock account managed by Hurd.  Although Plaintiffs have not seen any evidence,  Plaintiffs allege Engelter informed them Terese changed her beneficiary designation from Plaintiffs to Engelter.   Although Plaintiffs are unaware of the total amount withdrawn, they contend Engelter has significantly depleted Terese's funds for his own extravagant lifestyle all the while he plied Terese with alcohol and mentally and emotionally abused and bullied her for his own personal gain.  Defendant Signator has served as the broker/dealer for the John Hancock account.

2

Plaintiff's Complaint alleges causes of action for Conversion, Embezzlement, Tortious Interference with Expectancy of Inheritance, Unjust Enrichment, Fraud and Breach of Fiduciary Duty.

### Procedural History

On March 9, 2012, Defendants removed the case to this Court alleging jurisdiction based on diversity.  According to Defendants, John Hancock is a Michigan Corporation, Signator is a Delaware Corporation,  Hurd is a resident of Michigan and, notwithstanding the allegations in the Complaint, Engelter is a Michigan resident.  On March 13, 2012, Plaintiffs filed a Motion to Carry Over Temporary Restraining Order from State Court, Motion for Preliminary Injunction, or in the alternative, a Motion to Issue a new Temporary Restraining Order (ECF # 4).  The TRO sought to restrain Engelter from further depleting the remaining assets in the John Hancock account.  On March 14, 2012, the Court held a telephone status conference and ordered the parties to enter a stipulation on the John Hancock account due, in part, on the Court's concerns whether it had subject matter jurisdiction over the case due to the lack of diversity on the face of the Complaint.

On March 22, 2012, the parties entered into a Joint Stipulation wherein John Hancock stipulated that there is an injunction presently pending in Probate Court preventing any distribution of the John Hancock account until further order of the Probate Court.  The IRA is also encompassed within the language of the restraining order.  Beyond the injunction, John Hancock stipulated it has placed an internal "freeze" on the IRA and will not distribute funds from the account unless authorized by the Court or by agreement of the parties.  The above stipulation rendered Plaintiffs' Motion for Carry Over TRO moot.

On April 5, 2012, Plaintiffs filed a Motion to Remand based on their contention that, at the time of the filing of the Complaint in Probate Court, Engelter was a resident of Ohio, therefore, no complete diversity exists.  In support of their Motion, Plaintiffs' attached the affidavit of Alyssa attesting that Engelter lived at the Westlake home at the time of the filing of the Complaint in Probate Court.

Simultaneously with its Motion to Remand, Plaintiffs filed a Renewed Motion for Temporary Restraining Order and Preliminary Injunction, alleging that the stipulation resolving the original motion before the Court was not sufficient to encompass other assets of the estate. Plaintiffs seek to enjoin:

> Defendants, their agents, servants, employees, and attorneys, temporarily ordering them not to transfer any tangible or intangible property which is currently titled in the name of Terese M. Mehling or property in which she had an interest at the time of her death or for the period immediately preceding her death (from November, 2006 until the present), including property titled in her name, property listing her as a beneficiary, property which she owned jointly or as a tenant in common with others, and property in the name of her business, Business & Pleasure Group, LLC, pending a final disposition of Plaintiffs' action, such Temporary Restraining Order to continue until such a time as a hearing may be had on Plaintiffs' request for a Preliminary Injunction.

On April 10, 2012, Defendants John Hancock and Signator filed a Motion to Stay, contending that at the March 14 telephone conference Plaintiffs represented they were not challenging the Court's subject matter jurisdiction because the Court represented it could not issue injunctive relief if it lacked jurisdiction over the case.  Now, Plaintiffs reverse course and challenge the Court's jurisdiction.  Defendants move the Court to Stay ruling on Injunctive relief until it resolves the jurisdictional issue at hand.

Defendant Engelter  opposes the Motion to Remand contending he IS a resident of Michigan ever since he was evicted in December 2011 from the Westlake, Ohio home by Alyssa.

4

Engelter claims that upon eviction he immediately established residency in Michigan. He offers his affidavit as proof and offers his vehicle title showing a Michigan address as of February 22, 2012, before Plaintiffs filed the state court action. He also attests that upon his eviction from the Westlake home, all correspondence has been sent to Michigan where he attests he resides since December with family members.

When diversity jurisdiction is alleged the citizenship of a party is determined as of the date of the commencement of the action. *Charter Tp. of Muskegon v. City of Muskegon,* 303 F.3d 755, 759 (6th Cir.2002) ("The district court recognized that for purposes of federal court jurisdiction, diversity of citizenship is determined at the time the action is commenced ..."). The "party 'seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction.' " *Coyne ex rel. Ohio v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999) (quoting *Certain Interested Underwriters at Lloyd's v. Layne,* 26 F.3d 39, 41 (6th Cir.1994)).

"State citizenship for the purpose of the diversity requirement is equated with domicile." *Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir.1990). To change domicile, a person must establish two things: "residence in the new domicile, and the intention to remain there." *Id.* " 'A citizen of the United States can change his domicile instantly. To do so, two elements are necessary. He must take up residence at the new domicile, and he must intend to remain there. Neither the physical presence nor the intention to remain is alone sufficient.'" *Napletana v. Hillsdale College,* 385 F.2d 871, 872–873 (6th Cir. 1967), (quoting C. WRIGHT, HANDBOOK OF THE LAW OF FEDERAL COURTS § 26 (1963)). *See also Deasy v. Louisville & Jefferson County Metropolitan Sewer District,* 47 F. App'x 726, 728 (6th Cir.2002) ("To acquire a domicile within a particular state, a person must be physically present in the state and must have

5

either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.").

"The district court has broad discretion to determine the manner in which the issue of domicile will be considered.  The judge may decide the question on the basis of the pleadings, affidavits of the parties or nonparties, available depositions, and other evidentiary materials, or he or she may call for a full evidentiary hearing to receive additional testimony." *Lim v. Chisato Nojiri and Terumo Americas,* No. 10cv14080, 2011 WL 1626551. (E.D.Mich., April 28, 2011) quoting Wright, Miller & Cooper, Federal Practice & Procedure § 3612 (3d ed 2009).

Here, the overwhelming evidence supports diversity.  Engelter offers his affidavit and supporting documents showing his mailing address in Michigan, vehicle title in Michigan and attests he intends to remain in Michigan where his son and grandchild reside.  He offers proof that he banks in Michigan and has his social security checks deposited there.  He also includes phone bills, Sam's Club Membership and satellite TV bills showing his Michigan address.  Also, the Court notes that service of the Complaint in state court was perfected on Engelter at a Michigan address according to the Cuyahoga County Court of Common Pleas docket.

Plaintiffs offer the affidavit of Alyssa Mehling Smith attesting that at the time of the commencement of the probate action, Engelter resided in Westlake, Ohio.  She also attests they bargained with him to remain in the Westlake house for a year which shows he intended to stay in Ohio.  They further argue that he has never claimed the Ohio Probate Court lacked jurisdiction over him.

Because the Court establishes diversity of citizens at the time of the commencement of the action before the federal court, Engelter's residency at the time of Plaintiffs' filing of the

6

Probate Court action is of no consequence.  This action was filed in February 2012, more than a month after the action in probate court commenced.  Furthermore, Engelter has provided sufficient evidence showing he resided in Michigan at the time of the commencement of this action in February 2012, presently resides in Michigan and intends to remain in Michigan. Therefore, the Court finds it has subject matter jurisdiction and denies Plaintiffs' Motion to Remand.  Furthermore, the Court, having denied the Motion to Remand, denies Defendants' Motion to Stay as moot.

Finally, the Court denies Plaintiffs' Motion for Renewed TRO since Plaintiffs acknowledged at the July 20, 2012, Case Management Conference that the Motion was not viable absent discovery.  Therefore, the Court denies the Motion for Renewed TRO subject to refiling after discovery.[1]

For the foregoing reasons, the Court denies Plaintiffs' Motion to Remand and Motion for Renewed TRO, and denies, as moot, Defendants' Motion to Stay.

IT IS SO ORDERED.


  S:/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

---

[1]     Plaintiffs' Renewed Motion for TRO also failed to provide competent evidence sufficient to establish, by clear and convincing evidence, Plaintiffs' right to injunctive relief.  The only evidence attached to Plaintiffs' Motion were unauthenticated email strings.